IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH C.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 1:18-cv-01863-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Kenneth C. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff argues that the Administrative Law Judge ("ALJ") erred by improperly rejecting medical testimony and improperly rejecting Plaintiff's symptom testimony. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

    Plaintiff's initial application for benefits was denied. Tr. 269–76.[2] On appeal, the Court remanded the matter to revaluate Plaintiff's mental impairments and reassess Plaintiff's maximum

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.
[2] "Tr" refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

residual functional capacity ("RFC"). Tr. 646. After holding a second hearing, the ALJ once again found that Plaintiff was not disabled. Tr. 643–64. The Appeals Council declined to review this second decision and Plaintiff seeks review.

## STANDARD OF REVIEW

A reviewing court will affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner finds that the claimant can perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; chronic pain syndrome; polyarthropathy of osteoarthritis type (later onset); generalized anxiety disorder; attention-deficit hyperactivity disorder, primarily inattentive type; tic disorder not otherwise specified versus Tourette's syndrome; conduct disorder as a child; recurrent major depression; cannabis use disorder (moderate); intellectual disability (mild); and somatic symptom disorder. Tr. 649. The ALJ found that Plaintiff had the following RFC:

> I find the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to no climbing of ramps, stairs, ladders, or scaffolds. He is limited to occasional bending and stooping, but no kneeling, crouching, or crawling. He is limited to no exposure to extreme cold. He should have no exposure to workplace hazards including unprotected heights and moving mechanical parts. He is limited to simple, routine, and repetitive tasks, with simple work-related decisions consistent with a reasoning level of two and unskilled work as defined in the Dictionary of Occupational Titles. He is limited to occasional changes in a routine work setting. He will adequately respond to usual work situations (defined as fair). He is limited to occasional interaction with supervisors (defined as interaction necessary to carry out the essential functions of the job) and superficial interaction with coworkers and the public (defined as causal or perfunctory, but not total isolation).

Tr. 653–54. Based on the vocational expert's ("VE") testimony, the ALJ concluded Plaintiff could not perform past relevant work but could perform jobs that exist in significant numbers in the national economy. Tr. 662–63. The ALJ determined Plaintiff was not disabled. Tr. 664.

Plaintiff argues that the ALJ committed legal error by improperly rejecting medical opinions and Plaintiff's symptom testimony.

**I. Medical Opinions**

Plaintiff argues that the ALJ erred by rejecting treating and examining physician testimony without providing "clear and convincing" reasons. Pl.'s Op. Br. 13, ECF No. 11. The

Commissioner counters that the ALJ provided substantial evidence and did not err in partially rejecting treating and examining physician testimony. Def.'s Br. 4–5, ECF No. 15.

Generally, a treating doctor's opinion is entitled to more weight than an examining doctor or reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This is because treating physicians likely provide a "longitudinal picture" of impairments and "bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2). Similarly, an examining physician's opinion carries more weight as opposed to a non-examining source's opinion. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). When faced with conflicting medical evidence, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

### A. Dr. O'Connell's Testimony

Plaintiff first argues that the ALJ erred by only giving partial weight to Dr. Michael O'Connell's opinion. Dr. O'Connell performed an intellectual assessment of Plaintiff in January 2018. Tr. 1157. Dr. O'Connell found that Plaintiff's full-scale intelligence quotient score and Plaintiff's working memory test score were in the extremely low range. Tr. 1162. Dr. O'Connell diagnosed Plaintiff with an intellectual disability, a somatic symptom disorder, and substance

abuse disorders. From these results, Dr. O'Connell opined that Plaintiff was unusually sensitive to perceived criticism but would only be moderately limited in his ability to respond appropriately to changes in a work environment. Tr. 1154. The ALJ assigned this opinion partial weight, reasoning that while it was "internally consistent," Dr. O'Connell "was not able to view the longitudinal record." Tr. 662. The ALJ noted that Dr. O'Connell did not discuss how Plaintiff's use of narcotics and cannabis before testing might have impacted the results, how Plaintiff's past work as a custodian challenged Dr. O'Connell's conclusion that Plaintiff had subaverage intellectual functioning, and how Plaintiff's history of substance abuse might have impacted his mental functioning. Tr. 660–62.

The Court finds that the ALJ properly discounted portions of Dr. O'Connell's opinion by including a thorough recitation of the facts and discussing conflicting evidence in the record. *Chaudhry*, 688 F.3d at 671; *Magallanes*, 881 F.2d at 751. There are many examples within the record that the ALJ cited to support their analysis. *See, e.g.*, tr. 90 (displaying a pattern of narcotic seeking behavior); tr. 121 ("[Claimant] is able to carry out very short and simple instructions without special supervision and can maintain a regular schedule."); tr. 374 (suggesting that cannabis use impacts Plaintiff's mental assessments); tr. 385 (discussing Plaintiff's angry reaction to being refused narcotics); tr. 456 ("When told that he wouldn't receive narcotic pain meds (sic) here, [Plaintiff] left . . . against medical advice.").

Plaintiff argues that it was legal error for the ALJ to determine that Dr. O'Connell did not have a view of the longitudinal record, specifically relying on the fact that Dr. O'Connell had reviewed a psychiatric evaluation from 2011. Pl.'s Op. Br. 14; Tr. 1158–59. Yet an ALJ may discount a physician's testimony if the ALJ determines that the physician has not developed a longitudinal record. *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001). Here, the

5 – OPINION AND ORDER

ALJ did not err by determining that Dr. O'Connell's one-time examination of Plaintiff and review of a prior evaluation did not equate to a view of the longitudinal record. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source."). Plaintiff's argument is a reanalysis of the ALJ's decision, but the Court must defer to the ALJ's resolution of conflicting evidence. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

For these reasons, the ALJ's decision to assign Dr. O'Connell partial weight is supported by substantial evidence and not legal error.

### B. Dr. Brandenburg's Testimony

Plaintiff next alleges that the ALJ improperly rejected testimony from Dr. Daniel Brandenburg, Plaintiff's treating physician. Dr. Brandenburg opined that Plaintiff is moderately limited in his ability to understand, remember, and carry out simple instruction and make judgments on simple work-related decisions. Tr. 1183 Dr. Brandenburg also discussed Plaintiff's physical impairments, opining that Plaintiff could only sit, walk, or stand for two total hours in an eight-hour workday. Tr. 1183. Dr. Brandenburg stated that Plaintiff would need extra breaks during the workday, could only occasionally lift less than 10 pounds, and that Plaintiff would be absent from work more than four days a month. Tr. 1184–85.

The ALJ gave both portions of Dr. Brandenburg's opinion partial weight. Tr. 662. First, the ALJ assigned the mental assessment partial weight because "this opinion is not related to [Dr. Brandenburg's] specialty and is not supported with an explanation or objective findings." Tr. 662; *see also* 20 C.F.R. §§ 404.1527(c)(5); 416.927(c)(5) (directing the Commissioner to assign more weight to medical opinions from specialists). Next, the ALJ assigned partial weight to Dr.

Brandenburg's opinion on Plaintiff's physical limitations, finding that it was not fully supported by the record or Dr. Brandenburg's own treatment notes. Tr. 662.

Plaintiff specifically argues that "contrary to the ALJ's assertions, Dr. Brandenburg's treatment notes do reflect Plaintiff's ongoing severe pain." Pl.'s Op. Br. 17. As noted by the ALJ, Dr. Brandenburg is Plaintiff's treating physician, so the ALJ could only reject Dr. Brandenburg's opinion by offering "specific and legitimate reasons . . . supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotations and citations omitted). An ALJ may also discount a treating provider's opinion by noting inconsistencies between the opinion and a claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999)). The ALJ can meet their burden by setting "out a detailed and thorough summary of the facts and conflicting evidence, stating [their] interpretation thereof, and making findings." *Id.* (internal quotations and citations omitted).

Here, the ALJ met this burden in his analysis of the entire record. *See* tr. 649–62. The ALJ discussed Dr. Brandenburg's own treatment records, other medical records, and Plaintiff's own testimony in his review of Dr. Brandenburg's opinions. His review contains specific and legitimate reasons supported by substantial evidence to assign partial weight. *Trevizo*, 871 F.3d at 675. The ALJ explained why Dr. Brandenburg's opinion regarding Plaintiff's ability to hold objects was contradicted by treatment records that showed a successful carpal tunnel release surgery with no complaints of residual symptoms. Tr. 120 ("[Plaintiff's] grip strength, sensation and function is intact following right carpal tunnel release and [Plaintiff] does not report symptoms in the left hand and wrist."); Tr. 406; Tr. 649–50; Tr. 662. The ALJ also noted that Dr. Brandenburg's treatment notes did not align with other medical evidence in the record, such as treatment notes discussing

Plaintiff's constant pacing and Plaintiff's self-reported ability to complete yard work. *Compare* tr. 659 *with* tr. 1161 ("By [Plaintiff's] report, his only activity is pacing/walking, which he does all day long.") *and* tr. 1188 ("In the morning, he will do yardwork.").

Because the ALJ provided thorough analysis that pointed to specific and legitimate reasons supported by substantial evidence, the Court finds that the ALJ did not commit legal error.

## II. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting his subjective symptom testimony. An ALJ can only reject testimony about the severity of a claimant's symptoms by offering "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas*, 278 F.3d at 959. But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may "consider a range of factors," which includes:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim*, 763 F.3d at 1163. The Court will uphold an ALJ's credibility finding even if all the ALJ's rationales for rejecting clamant testimony are not upheld. *Batson*, 359 F.3d at 1197.

At the hearing, Plaintiff testified that he cannot work due to constant pain and a learning disability. Tr. 693. Plaintiff explained that he is always "on edge" because of the pain. Tr. 694. He also testified that because of his learning disability he could not understand simple instructions. Tr. 699.

The ALJ found that although Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, his testimony about the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 655. Plaintiff argues that the ALJ's reasoning fails to satisfy the clear-and-convincing standard because the ALJ did not "make specific, clear, and convincing findings to support the rejection of [his] testimony." Pl.'s Op. Br. 18. The Commissioner counters that the ALJ provided clear and convincing reasons for not fully adopting Plaintiff's testimony. Def.'s Br. 12.

Here, the ALJ supplied clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. The ALJ discussed evidence in the record where Plaintiff contradicted his own testimony or changed his story to seek out a favorable result. Tr. 656. The ALJ noted multiple reports where health officials expressed concern that Plaintiff showed narcotic seeking behavior, even though objective medical evidence did not support Plaintiff's allegations of pain. *See, e.g.*, Tr. 656 (citing tr. 385 (expressing anger and hostility after failing to obtain pain medication)); *id.* (citing tr. 456 ("When told that he wouldn't receive narcotic pain [medication] here, he left the [emergency department] against medical advice.")); *id.* (citing tr. 462–63 (refusing to prescribe Plaintiff pain medication)). The ALJ also noted that Plaintiff provided contrasting reports about why he stopped working as a custodian. Tr. 656; *Compare* tr. 695 (stating that he was fired for poor job performance) *with* tr. 1157 (stating that he quit because he felt that his supervisors pushed him too hard). An ALJ may discount a claimant's testimony based on "prior inconsistent statements concerning the symptoms and other testimony by the claimant that appears less than candid." *Ghanim*, 763 F.3d at 1163 (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)).

The ALJ also cited two additional clear and convincing reasons to discount Plaintiff's testimony. First, the ALJ cited activities inconsistent with Plaintiff's alleged limitations. An ALJ may use activities of daily living to discredit a claimant's testimony where (1) the activities meet the threshold for transferable work skills or (2) the activities contradict the claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For example, although Plaintiff alleged that his pain was debilitating, the ALJ cited reports that Plaintiff testified to mowing his lawn and that Plaintiff collected deposit cans and bottles, "which would involve walking, bending, reaching, and hand manipulations in excess of his allegations of total debilitation." *See* tr. 91, 120–21, 373, 437, 655–56. Although Plaintiff advances another rational interpretation, the Court "must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198.

Second, the ALJ noted objective evidence inconsistent with Plaintiff's allegations. *See* Tr. 656 (citing tr. 364, 378, 382, 403, 412, 416, 439–40, 490, 528, 532, 627–28). While an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence," a lack of objective medical evidence may justify discounting subjective symptom testimony when coupled, as here, with other permissible rationales for discounting a claimant's testimony. *Bunnel v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Thomas*, 278 F.3d at 958–59 (upholding ALJ credibility determination based on lack of "objective medical evidence," along with other permissible rationales for discounting claimant testimony).

In sum, the ALJ provided clear and convincing reasons for partially rejecting Plaintiff's subjective symptom testimony.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 13th day of February, 2020.

                                                      __s/Michael J. McShane_____
                                                      Michael J. McShane
                                                      United States District Judge